We'll now proceed with United States v. Hyatt. Can I ask you a question procedurally? Sure. Is this the one where we got the motion to correct pre-sentence report filed in the Court of Appeals? Was that a mistake? I'm sorry, I didn't brief the case, so I'm not entirely sure what you're talking about. There was a motion to correct the pre-sentence report that was filed in the district court. But there was no intent to file one in the Ninth Circuit. I'm sorry, Your Honor, I don't know that. That's okay. I would hope that you would know the case even better than us. I do know the case on the briefed issues, but I'm sorry. It was the last-minute thing for me to take over this argument, and I don't know whether that particularly was meant to be filed. That's all right. Seems like it's a definitive document, so we'll just... It's not addressed to the Ninth Circuit. So there's no harm in our ignoring it because it shouldn't have been filed here in the first place? I don't know whether the trial attorney meant to file it with this court or not. Nothing in the argument relies on it. This case presents an example of the difficulty in striking a reasonable balance when a mentally ill person violates the criminal law. Counsel, as I understand it, the problem here is it's an imaginary and not a real 13-year-old. Imaginary pictures that were hoped for but never taken. And the question is whether the cross-reference applies. And when I read the cross-reference, that offering or seeking looks like a real problem for your case. Why isn't it, the phrase offering or seeking? It looks like what it means is you don't have to have succeeded. All you have to do is try. I agree, Your Honor. I agree that by the technical language of the guideline cross-reference that the cross-reference is in fact applicable to the case. But I don't think that ends the analysis in this case. Because there is an issue of Mr. Hyatt's mental illness, the propriety of consideration and the issue of whether the court struck a reasonable sentence when it considered all the issues. Let's put off 3553 for a moment. How does a mental illness affect use of the cross-reference? I don't think you've got any competence to stand trial or something like that here, do you? No, we don't, Your Honor, and as I just said, we concede that the technical language of the guideline makes the cross-reference in this case applicable. I would like to address what happens when you have a serious offense committed by one with what the district court referred to as severe mental illness. Both factors under the law are relevant to what a reasonable sentence is. The problem here is that the district court considers only the first, and as the government has put it in its brief. Would that go to use of the cross-reference or just to 3553? No, to the reasonableness of the sentence. Okay. So the mental condition will go to 3553. Yes. Now, where is the evidence about the mental condition that should have been taken account of for 3553? The evidence of mental condition? Mm-hmm. There was in both the probation report, which has been filed with this court, with the independent psychological report that was done, that was also filed with the court, and in what the district court acknowledged, there is evidence of Mr. Hyatt's severe mental health condition. I just want to look at the good words now, so page numbers would be great if you've got them handy. I don't have a page number to the PSR, but there was a file under seal. We've got the PSR. Okay. And the PSR... Just say where to look. Pardon me? Just say where to look. We've got the PSR. Oh, in the PSR where the evidence has been analyzed? Yeah. Yeah. I want to look at the evidence. Can I just get on the page here? As I understand it, your brief was almost all about applicability of the cross-reference, and then we got to the last page, basically, or the second-to-last page, and that's about reasonableness. And that's what you want to talk about now. Yes. And basically that's all that's left in this case. Yes. So I'm just wondering why anybody bothered us with the eight-tenths of your brief. But anyway, all right. Starting at page 11 of the PSR, there's an entire section that goes on for six or seven paragraphs about Mr. Hyatt's mental and emotional health. In this case, what the district court did is it... It doesn't look that severe to where he would do things uncontrollably. It looks like bipolar I, depressed, mild. Bipolar I, most recent episode, depressed, alcohol abuse and institutional remission, and generalized anxiety disorder. Now, that's not a happy person, but I don't understand how you tie that to the 3553 factors. Okay. Well, I'm going to get that, okay? In this case, the district court did, as it's supposed to do, a guideline calculation first. And in doing the guideline calculation, it came up with a sentence of 96 months, which it thought was adequate to deal with the behavior that Mr. Hyatt was convicted of. Is your argument that the district court did not take any account of the mental difficulties? What the court did with the mental difficulties, Your Honor, is it, in the government's words, neutralized them. What the court found was that his severe mental health condition was a serious condition and therefore mitigating. But then found... Right. So didn't the district court, though, give him a lesser sentence, at least under the recommended guideline range in view of the mental difficulties? No, Your Honor. I don't believe that the fair reason... What was the guideline range? The guideline range, the low end of the guideline range with the cross-references, was 135 months. And he got 96 months. But if you look at the record, what is very clear about how the district court came up with that 96 months is it was looking at, not at his mental health condition, but at the behavior that he committed and what it was, in this case, what that was worth. And what the court did and how we know that is because the court came out and the very first thing and the repeated thing out of the district court's mouth was you look at this guideline without the cross-reference and it's way too low for this behavior. But you look at it with the cross-reference, even though we've now added a camera, and so that's why we're looking at the cross-reference, and it's way too high for this behavior. And so what I think it's worth... How do we know if it's way too low or way too high? Pardon me? How do we know if it's way too low or way too high? I'm not asking this court to reassess the district court's opinion about whether that was way too low or way too high for this behavior. What I'm saying is that 96 months that the district court arrived at was not based on Mr. Hyatt's mental health condition. When it got to Mr. Hyatt's health condition, which was after arriving at the 96 months, to determine whether it was worth anything less than 96 months, it neutralized it by finding... His mental health condition is poor. I've reviewed it. I realized it gets worse than the things I read to you before. His bipolar gets better and it gets worse. His mostly depressed side rather than manic side. And it looks like he drinks a fair amount, probably to self-medicate because he feels so miserable. No question, he's a very unhappy man because of this mental condition that, well, that particular type of condition, it's nobody's fault. It just happens. But I do not understand how that has to do with the crime. In fact, what I would expect with a person if his bipolar depression was really bad is he wouldn't be able to get it together to arrange this tryst with a 13-year-old and do all the driving and hotel reservation and all that, get it done. Well, of course, Your Honor, when he's in a depressed state, that might well be accurate. He is mostly in a depressed state. But what the evidence shows is during the course of this five-month negotiation with the undercover agent that he was in a hypomania state. And in that state, he would be. When you're in a mania state, and the evidence shows it in this case, you're very directed towards what you do. Did you get a letter here or something from a doctor saying he was in the manic phase and doing this crazy stuff? People do it on airplanes all the time. There is a report from a doctor which, again, I greatly apologize for the report. It was my understanding it was filed under seal with the PSR. Well, you have the access to the things filed under seal. We have the access. So tell me where it is so I can look at it while we chat. It's a report that is written by Dr. Barry Glenn that was introduced into evidence, and the district court considered it, which goes on at length about him being in a hypomania state and what that meant. And I'd like to point out just a few things very quickly of what that report says. You're over the time. It just took us too long to find out about these details. We'll give you 30 seconds or a minute for rebuttal anyway. Counsel? Good morning, Your Honors. May it please the Court, Jill Thomas for the United States. As the defense just conceded that the cross-reference applies in this case, I'll focus my comments on the reasonableness of the sentence. Let's talk about the reasonableness because I think, as you say, you've got a concession on the cross-reference. Yes, Your Honor. On the reasonableness, I just found this evaluation by Barry Glenn, Ph.D. Does it say that he was in his manic phase where it's hard to control this crazy behavior? I believe that it does, Your Honor, and I don't have the exact cite to it. And do you have the psychological evaluation? Why wouldn't that require more mitigation? Well, I think the district court mitigated the case downward from 135 months to 96 months, and he had considered the mental illness very seriously, and he talked about all the information that was important to him in making his ultimate decision based on the 3553 factors. And so he considered the defendant's mental illness when he departed downward from the 135 months. Hyperactivity and hypersexuality are symptoms of the disease. It seems so, Your Honor. And the PSR at 11 speaks to Dr. Glenn's assessment of the defendant's mental illness about his attraction to minors. He states, Dr. Glenn stated Hyatt's offense conduct suggested an attraction toward minors. That's why the district court in this case wanted to deter Mr. Hyatt from ever doing this again, but he also wanted to punish somebody who took major steps to cross interstate lines to then have sex with a minor and intend to videotape that. And that is that excerpt of record, page 36. In addition to that, the district court considered all the factors under 3553, and he talked about that the defendant's conduct in sexual activity ruins lives, that it's a terrible crime. He did consider the mental health issue neutral, because he thought about it. If, in fact, the defendant has this mental illness, well, then that's a factor to consider for mitigation, but it also is aggravating in the sense that he can't keep himself under control, and there is a danger to society. And so his mental illness cut against him just as much as it was in his favor. When the judge actually wrote out his written reasons, he basically said he's departing downward for two reasons. One, he wasn't involved in commercial activity, and one was mental illness. So it didn't sound like a neutral to me. That is correct, Your Honor. On page 47 of the excerpt of records, that is in the Rule 32 document. However, when he was talking on the record about the mental illness, he spoke about it as a neutral factor, that he considered it seriously on both sides of the fence. And to him, on page 9 and 10 of the excerpt of records, he stated that it cut both ways and that it was, in fact, a contributing factor in his crime, and it would be a contributing factor in the future. And so that's why perhaps he didn't depart downward even further, but that's where the stopping point was 96 months. So he gave him credit for having this mental illness, but he didn't go further down there. I know we're reviewing this sentence for reasonableness, but how do we review the, what's the standard we apply to the district court's sentence? For the sentence, for reviewing the sentence, you review it for reasonableness. And first you, the district court calculates the guidelines, and from there, then he applies the factors. And so was the district judge clearly? I'm not sure. I know we're reviewing it for reasonableness. Do we have, have we stated any standard like use of discretion for deciding if it's reasonable? I don't exactly know how one does this. For the interpretation of the guidelines, it's de novo for the application. I'm concerned about that. How about reading us the words from Rita and reading us the words from the Ninth Circuit case that says what you do with Rita? Do you know what I'm talking about? I do, Your Honor. I have read that case, although I did not read it in connection with this case. I imagine you would have reviewed it on the plane. That's correct, Your Honor. So I didn't apply Rita to this case. And so here, consistent with the Marcial Santiago case, that was a fast-track case that didn't violate the Booker or 3553A6. It was a case in regarding sentence disparities, because Congress authorized that program. And likewise here, the district court considered all the 3553A factors, and therefore his finding that the sentence was reasonable should not be overturned by this court. And nonetheless, I realize there was a concession, but the district court stated on the record that he would have found this sentence reasonable under the 3553 factors, even if the cross-reference didn't apply. So he would have departed upward had the lower guideline applied. And in this case, he departed downward from 135 to 96 months. And the district court certainly took into the mental health treatment that he was getting in jail as something he had not even lauded, he praised the jail staff, because the defendant was actually getting better treatment in the Sacramento County jail within the last months before he was sentenced, and he thought that that treatment he could use would be, he would be better served in jail rather than out of jail any earlier than the 96 months. And so, and therefore he departed downward. There is another case on point, is the Noses Guns, which is cited in the brief. It's a pre-Booker decision, but it talked about that the alternate sentence, based on all the factors, was sufficient to not result in an alternate sentence. And the court affirmed the decision in that case. And as far as the counsel, the psychologist said that he was not diagnosing a paraphernalia, such as pedophilia. It looked to him like the aberrant sexual behavior only happened during a manic episode or mixed episode of mania and depression. The question is, if this sort of sexual behavior occurred during a non-manic period. Did it ever occur during a non-manic period? Was the psychologist asked about this? The psychologist did not find a time where his activity happened in a non-manic state. And was the mania controllable? Did they give him lithium or something and control it? Well, it was controllable by the time he got to the Sacramento County Jail, at least within the month or two previous to his sentence. And so therefore, that's why the district court believed that his treatment in jail was even better than what he was getting on the outside. In addition, I only have a minute and 25 seconds left, but for purposes of reasonableness, the district court did give a departure of 30% in this case. And as you know, the Bohannon case, while there wasn't a lot of discussion about mental health illness, he received a sentence of 120 months in the Bohannon court. And so he had a significant increase in his punishment, whereas this case, which is very similar factually, this defendant received a 30% departure from the 135 months to 168 month guidance. And that's the guideline range. With that, the government submits, unless there are any further questions by this court. I don't recall what the judge said about this conclusion from the psychologist that his score put him on the low risk category for re-offense, 6% within 5 years, 7% within 10 years, 7% within 15 years. Did the judge pay attention to that? He did not speak specifically, Your Honor, to the 6%, 7% recidivism rates. He spoke in general that he took everything into account about the mental illness, that he gave the serious thought, and that he read all the papers on the defendant's mental illness and thought that the right sentence was the 96-month sentence and the correct sentence. Thank you, Counsel. I don't understand the logic that you were deferential to the findings of reasonableness of the district court. To some extent. This circuit does not apply what the Supreme Court said in Rita. The circuits could have a rule, which is if it's in the guideline range, it's presumptively reasonable. This sort of circuit does not apply this. The circuit applies a rule that if the court has adequately considered all the factors before and included all the factors before, then the court should be able to make a decision. If the court has adequately considered all the factors before and included all the factors before, then the court should be able to make a decision. You look at the bottom line, but it's not your, I'm not asking you, and nor is it right for me to ask you to substitute your judgment of what is reasonable for the district court's judgment. My argument in this case is the analysis the district court did was flawed, and that's why it needs to be sent back for resentencing. Because the district court specifically said more than once in the record that this was a neutral, his mental health was a neutral factor. That's at ER 10, at ER 38 to 39, and that is inconsistent with the record. What the record shows here is that he has no prior history, he had no stash of child porn, he was now properly medicated. The suggestion that we can keep someone in jail. How is that inconsistent with the record to show that, to say for the court to conclude that his mental health history is neutral? How is that inconsistent? Because the court found that it was neutral by saying it's mitigating because it's so severe. It's mitigating on the one hand, but it's aggravating on the other hand because it shows he's more likely to be, to reoffend. So what case authority? I think we have the same question. No, well, what I'm saying is the evidence does not support the finding that the district court made that he's more likely to do it again because of his mental health. The psychologist said hypersexuality is a symptom of mania and bipolar disease, which all the books also say. Nothing wrong with that. Well, the judge says on the one hand it's not as much your fault because the sickness makes you much more inclined to commit this crime. On the other hand, you're more likely to reoffend because the sickness makes you want to commit this crime. What's inconsistent? It's the uncontrolled symptoms that make him more likely to get in a manic phase. He is not a client who does not want to take his medication. I'm sure the court has come across cases that involve clients like that frequently. That's not this client who has taken everything ever prescribed to him. It may be that he didn't get the right medication until he got into jail, but now he's got the right medication. Everybody agrees, including the government here, that he's properly medicated. Thank you, counsel.
judges: Kleinfeld, Rawlinson, Restani